IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 5, 2019

## STATE OF TENNESSEE v. ATU CAMPBELL

**Appeal from the Criminal Court for Shelby County**
No. 14-02589      Lee V. Coffee, Judge

_____

### No. W2019-00380-CCA-R3-CD
_____


The Defendant-Appellant, Atu Campbell, appeals the trial court's denial of his motion to withdraw his guilty plea, alleging that his guilty plea was unknowing and involuntary. Because the trial court failed to provide the Defendant with an evidentiary hearing, the State concedes error. Upon our review, we reverse the determination of the trial court and remand for a hearing on the allegations raised in the Defendant's motion to withdraw his guilty plea.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Claiborne Ferguson, Memphis, Tennessee, for the Defendant-Appellant, Atu Campbell.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Karen Cook, Assistant District Attorney General, for the Appellee, State of Tennessee.


### OPINION


On May 15, 2015, the Shelby County Grand Jury indicted the Defendant for aggravated child abuse, aggravated child neglect, and two counts of first-degree felony murder. The Defendant was set for trial August 27, 2018. Two days prior to trial, the State offered to settle the case. On the day of trial and pursuant to a negotiated plea

agreement, the Defendant entered a guilty plea to aggravated child abuse and second-degree murder and received an effective sentence of twenty years imprisonment.

During the guilty plea colloquy, the State and the Defendant stipulated to the following facts:

> [O]n or about October 25th, 2012, the mother of a Anain Nabors (phonetics), who at the time was seven months old, got a call while she was at work. They told her that her child was found in the back seat of a car being driven by [the Defendant].
>
> There had been a wreck where [the Defendant] drove his Nissan Altima through -- over a curb through some chain link into a small bush, coming to rest in a small bush. It was a moderate impact accident.
>
> There was an off-duty paramedic. Some other people came by. They noticed that [the Defendant] appeared to be disoriented but was -- and, otherwise, did not have any injuries. The baby was in the back seat of the car, not moving and already in quite a bit of distress. One paramedic indicated that she had a light heartbeat. The investigation ended there, unfortunately.
>
> Homicide was called. Homicide did not conduct an investigation. So [the Defendant] is charged with criminally negligent homicide and some driving charges.
>
> At some point, our office picked up the case, reinvestigated it, actually spoke with the mother, who indicated that she had left the child earlier that morning to go to work at about 6:30. She left the child with [the Defendant]. The child was in good health and appeared to be fine.
>
> [The Defendant] then took the child and was supposed to bring the child to the grandmother, Ms. Nicole Nabors, but he did not. The wreck actually occurred going in the opposite direction of where he would have been going to Nicole Nabors' house.
>
> The Medical Examiner looked at the case. Did an autopsy. Found significant injuries on Nicole (sic) Nabors, which included some broken ribs, lacerated liver.

Karen Lakin would have been -- would have testified from Le Bonheur. She also indicated that these injuries were -- indicated child abuse and were not likely to have been caused by that car accident.

The trial court interviewed the Defendant at length to ensure that his plea was knowing and voluntary. The Defendant testified that he had completed three years of study at the University of Tennessee and could read and write well in English. The trial court explained the Defendant's constitutional rights to him at length. Finally, the Defendant testified that he understood the effects of his plea and that he was pleased with the quality of his legal representation. As relevant to the issues raised herein, the following exchange occurred between the trial court and the Defendant:

THE COURT: Now, I got a call from [defense counsel] and [prosecutor] yesterday at about roughly 5:00, and they told me they had the case settled. But whether or not this case is tried is one hundred percent (100%) your decision. Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Now, when you enter this change of plea today, is that what you want to do?

THE DEFENDANT: Yes, sir.

THE COURT: And has anybody at all put any force or pressure on you to get you to make this decision?

THE DEFENDANT: No, sir.

THE COURT: And I ask you all these questions, [Defendant], because this is Monday, August 27th, 2018. [Defendant], people sit in that chair on the witness stand every day, week after week, month after month, for the last twelve years, and they tell me, "Judge Coffee, I'm pleading guilty. I'm entering this change of plea because this is what I want to do. I'm satisfied with my lawyer. I have no complaints about my lawyer at all." In fact, some people will tell me that they have absolutely no complaints. Then, a week from now, or a month from now, or six months from now, they will go to prison, [Defendant]. They will start talking to all these so-called experts, and they will tell them, "You need to file a complaint against your lawyer, and let Judge Coffee know that you did not want to plead guilty, that your lawyer somehow made you enter this guilty plea." They file these

silly complaints after they start talking to these so-called experts. Now, if you have any complaints about anything that [defense counsel or her] office has done since they've been representing you some four years, now is the time for you to let me know. Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any complaints at all, sir?

THE DEFENDANT: No, sir.

After the full colloquy, the trial court found that the Defendant's guilty plea was knowing and voluntary, accepted the plea, and sentenced the Defendant to twenty years imprisonment. The remaining counts charging the Defendant with aggravated child neglect and first-degree felony murder based on the same were dismissed.

On September 24, 2018, under the advice of newly retained counsel, the Defendant filed a motion to withdraw his guilty plea. In his motion, the Defendant claimed that "he was presented with a last[-]minute offer, without adequate time to consider that offer." The Defendant conceded that "trial counsel attempted to give him as much time as possible;" however, he averred that he was placed in "an inherently coercive situation, without family support, and made a decision based on fear." He argued that his guilty plea was therefore involuntary, and that he was entitled to have his guilty plea set aside. The Defendant also requested to make amendments to his motion, but none were made.

On January 28, 2019, the trial court entered a nine-page written order, denying relief. The trial court determined that the Defendant had understood the consequences of his plea and had entered it voluntarily. Therefore, the trial court summarily dismissed the motion without conducting an evidentiary hearing. It is from that order that the Defendant now appeals.

## ANALYSIS

The Defendant did not request a hearing before the trial court on his motion to withdraw his guilty plea, nor does the Defendant argue on appeal that the trial court erred in denying an evidentiary hearing on his motion to withdraw guilty plea. The Defendant contends that it would be a manifest injustice to allow him to plead guilty to such a serious felony with only one day to consider his options. According to the Defendant, such a short amount of time for consideration is inherently coercive when compared to the severity of his twenty-year sentence. Based on State v. Patrick Bumpus, No. W2018-

01034-CCA-R3-CD, 2019 WL 1896562, at *2 (Tenn. Crim. App. Apr. 29, 2019), the State concedes that the trial court erred in dismissing the Defendant's motion to withdraw a guilty plea without first conducting an evidentiary hearing. We agree with the State and remand for an evidentiary hearing.

This court reviews a trial court's decision regarding a motion to withdraw a guilty plea for an abuse of discretion. State v. Phelps, 329 S.W.3d 436, 443 (Tenn. 2010) (citing State v. Crowe, 168 S.W.3d 731, 740 (Tenn. 2005)). "An abuse of discretion exists if the record lacks substantial evidence to support the trial court's conclusion." Crowe, 168 S.W.3d at 740 (citing Goosby v. State, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995)). "As a general rule, a trial court's judgment becomes final thirty days after its entry unless a timely notice of appeal or a specified post-trial motion is filed." State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996) (citing Tenn. R. App. P. 4(a) and (c); State v. Moore, 814 S.W.2d 381, 382 (Tenn. Crim. App. 1991)). Because the Defendant filed his motion to set aside his pleas after his sentence was imposed but before the judgments became final, withdrawal of his guilty plea was permitted only "to correct manifest injustice." See Tenn. R. Crim. P. 32(f); Crowe, 168 S.W.3d at 741. "This standard is based 'upon practical considerations important to the proper administration of justice.'" Crowe, 168 S.W.3d at 741 (quoting Kadwell v. United States, 315 F.2d 667, 670 (9th Cir. 1963)). This court has outlined certain circumstances that warrant the withdrawal of a guilty plea under the manifest injustice standard:

> Although Rule 32(f) does not define "manifest injustice," courts have identified on a case-by-case basis circumstances that meet the manifest injustice standard necessary for withdrawal of a plea. See Turner, 919 S.W.2d at 355; [State v.] Evans, 454 S.E.2d [468,] 473 [(Ga. 1995)]. Withdrawal to correct manifest injustice is warranted where: (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

Crowe, 168 S.W.3d at 741-42 (internal footnotes omitted); accord State v. Virgil, 256 S.W.3d 235, 240 (Tenn. Crim. App. 2008). The defendant bears the burden of establishing that his or her plea should be withdrawn to correct manifest injustice. Turner, 919 S.W.2d at 355 (citation omitted).

"A defendant does not have a unilateral right to withdraw a plea." Crowe, 168 S.W.3d at 740 (citing State v. Mellon, 118 S.W.3d 340, 345 (Tenn. 2003); Turner, 919 S.W.2d at 355; State v. Anderson, 645 S.W.2d 251, 253-54 (Tenn. Crim. App. 1982)). Moreover, "a defendant's change of heart about pleading guilty or a defendant's dissatisfaction with the punishment ultimately imposed does not constitute manifest injustice warranting withdrawal." Id. at 743 (citing Turner, 919 S.W.2d at 355).

When analyzing the validity of a defendant's guilty plea, we follow the federal landmark case of Boykin v. Alabama, 395 U.S. 238 (1969), and the Tennessee landmark case of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by rule as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that a trial court may not accept a guilty plea unless there is an affirmative showing that the guilty plea was "intelligent and voluntary." 395 U.S. at 242. When accepting a guilty plea, the trial court is responsible for "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id. at 244. In Mackey, the Tennessee Supreme Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" 553 S.W.2d at 340.

A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). In determining whether a guilty plea is voluntarily and intelligently entered, a trial court must look at a number of factors, which include the following:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship, 858 S.W.2d at 904).

Some discussion of Patrick Bumpus, 2019 WL 1896562, is necessary to our conclusion in this case. Following the entry of his guilty pleas and agreed upon sentence but before his convictions became final, the defendant in Patrick Bumpus, acting pro se,

filed two motions with the trial court. The first motion, entitled "Motion to Appeal Best Interest Plea Agreement," alleged "various deficiencies of trial counsel" and claimed the defendant "had no choice, but to plea in open court, or be misrepresented at trial." The trial court denied the first motion, reasoning that any appeal of the judgment must be directed to the appellate court. In his second motion, entitled "Motion to Withdraw Guilty Plea," the defendant raised the exact same claims as his prior motion. The defendant's motion was summarily denied by the trial court. In its order denying relief, the trial court noted that the defendant had raised "seven or eight things which appear to be claims for ineffective assistance of counsel" but stated that "the court cannot convert his Motion to Withdraw his plea agreement to a Petition for Ineffective Assistance of Counsel." The trial court determined that the defendant had entered a knowing and voluntary guilty plea. Patrick Bumpus, 2019 WL 1896562, at *1.

In his appeal of the denial of his motion to withdraw his guilty plea, the defendant again raised various grounds of ineffective assistance of counsel, including the failure to file a motion to suppress, failure to investigate, and failure to provide the defendant with discovery as well as the allegation that his guilty pleas were not knowing and voluntary. The State conceded, and this court agreed, that a remand was necessary because this court was unable to reach the merits of the defendant's claim. In summarily denying the defendant's motion to withdraw guilty plea, the trial court in Patrick Bumpus had denied the defendant the opportunity to present any evidence and testimony in support of his claims of ineffective assistance of counsel. We recognized the overlap between manifest injustice and constitutional due process standards of review, see State v. Antonio Demonte Lyons, No. 01C01-9508-CR-00263, 1997 WL 469501, at *6-8 (Tenn. Crim. App. Aug. 15, 1997), and noted that "[a]llegations of constitutional violations, such as ineffective assistance of counsel or an involuntary guilty plea, may be appropriately addressed pursuant to a timely motion to withdraw a guilty plea because a violation of a constitutional right creates a manifest injustice as a matter of law." Patrick Bumpus, 2019 WL 1896562, at *2 (citing Crowe, 168 S.W.3d at 742-42); see also State v. Gregory Darnell Valentine, No. M2010-02356-CCA-R3-CD, 2012 WL 3263117, at *2 (Tenn. Crim. App. Aug. 10, 2012) (citing State v. Jerry Louis Fitzgerald, Jr., No. W2009-02520-CCA-R3-CD, 2010 Tenn. Crim. App. LEXIS 703 (Tenn. Crim. App. at Jackson, Aug. 20, 2010), no perm. app. filed.).

Represented by newly retained counsel, the Defendant herein filed a motion to withdraw his guilty plea after his sentence was imposed but before it became final. The entirety of the Defendant's allegation in support of his motion is as follows:

> In this case, [the Defendant] is not testing the weight of potential punishment, because he had an agreed-upon sentence. He is not seeking to undermine respect for the courts. Instead, after four years of incarceration

and a lengthy preparation for trial, he was presented with a last-minute offer, without adequate time to consider that offer. While his attorney attempted to give him as much time as possible, he was placed in an inherently coercive situation, without family support, and made a decision based on fear. It is not likely to be able to be voluntarily and knowingly enter (sic) a plea when one has only a day or two, in relative isolation, to consider whether or not to enter a plea.

We certainly understand the trial court's frustration with the above pleading filed by defense counsel in this case. Under the most liberal interpretation, however, the pleading can be construed as an ineffective assistance of counsel claim based on trial counsel's failure to timely convey the State's offer of settlement, a stand-alone claim of an involuntary or unknowing guilty plea based on coercion, or both. Accordingly, we agree with the State, and remand for an evidentiary hearing limited to the issues raised in the Defendant's motion to withdraw his guilty plea.

## CONCLUSION

For the reasons stated above, we reverse the judgment of the trial court and remand for an evidentiary hearing.

_____
CAMILLE R. McMULLEN, JUDGE